IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DOUGLAS KLING,

              Plaintiff,

     v.                           CASE NO. 14-3051-SAC

SAM CLINE, Warden,
et al.,

              Defendants.

**MEMORANDUM AND ORDER**

This pro se civil action was filed pursuant to 42 U.S.C. § 1983 by an inmate of the Hutchinson Correctional Facility, Hutchinson, Kansas. Having examined the materials filed, the court finds that the filing fee prerequisites have not been satisfied and the complaint is deficient in several ways. Plaintiff is given time to cure these deficiencies. If he fails to comply within the prescribed time this action may be dismissed without further notice.

**FILING FEE**

The fees for filing a civil action in federal court total $400.00, or for one granted leave to proceed without prepayment of fees it is $350.00. Plaintiff has submitted a Request for Leave to Proceed in forma pauperis (Doc. 2). However, this

Request does not meet statutory and other requirements. 28 U.S.C. § 1915 requires that a prisoner seeking to bring a civil action without prepayment of fees submit an affidavit described in subsection (a)(1), together with a "certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing" of the action "obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2). Mr. Kling has not provided a certified account statement for the six-month period immediately preceding the filing of this complaint. He claims that he cannot provide this statement because in order to obtain it he must send a self-addressed, stamped envelope to accounting in Lansing; and he has no envelope, paper, or stamp. However, the court has not had any other KDOC inmate allege that he was prevented in this manner from obtaining his account statement. Mr. Kling is given thirty days to meet the statutory requirement of providing a certified account statement. If he still claims to be unable to obtain this statement, he must provide documentation showing that he requested the statement, from whom it was requested, the date of his request, and the response to his request. If plaintiff fails to comply within the prescribed time, this action may be dismissed without further notice.

In addition, local court rule requires that such motions be on court-approved forms. Mr. Kling's motion is not upon forms. The clerk shall be directed to send Mr. Kling the appropriate forms.

Plaintiff is reminded that under 28 U.S.C. § 1915(b)(1), being granted leave to proceed without prepayment of fees does not relieve him of the obligation to pay the full amount of the filing fee. Instead, it merely entitles him to pay the fee over time through payments automatically deducted from his inmate trust fund account as funds become available.[1]

**ALLEGATIONS AND CLAIMS**

As the factual background for this complaint, Mr. Kling alleges as follows. On March 26, 2014, he was in the infirmary and requested a grievance form from a nurse who relayed his request to the officer on duty at the clinic. When he did not receive a grievance form within a few minutes, plaintiff complained to the nurse and began yelling to get the officer's attention. The officer, defendant John Doe #1, arrived shortly without the form. Plaintiff and the defendant officer got into a verbal altercation. The officer, who was much heavier than

---

[1] Under 28 U.S.C. § 1915(b)(2), the Finance Office of the facility where Mr. Kling is confined will be authorized to collect twenty percent (20%) of the prior month's income each time the amount in his institution account exceeds ten dollars ($10.00) until the filing fee has been paid in full.

plaintiff, violently pushed plaintiff across the cell where he fell onto his bed. Plaintiff saw the officer charging into the cell and "began defending himself" with punches, elbows, knees and any other means. During this physical altercation, the defendant officer and plaintiff hit each other. The altercation lasted several minutes until plaintiff could see that the officer was too tired to continue. Responding officers arrived after the altercations had ceased. Plaintiff immediately told Shift Supervisor Kipp about the incident and requested that footage from three cameras in the area be preserved.

On this same date, plaintiff was placed in segregation on "MRA status." All of plaintiff's property was taken except he is allowed to receive incoming mail. Defendants caused or allowed the following to be taken from plaintiff: all hygiene items purchased by him; all his phone privileges, all his legal materials including supplies, books, case law, copy tickets, and documents and materials from his closed and pending cases; all his stationary, envelopes, postage and addresses; and all his saved legal and personal letters and documents. Defendants knew these deprivations would prevent plaintiff from contacting his lawyer. Plaintiff was deprived of all avenues of contacting his family to have them contact his attorney and to inform them of the violent attack and his admission to the infirmary.

4

Defendants knew these deprivations would prevent plaintiff from taking legal action after being attacked by a correctional officer.

"Multiple other inmates" in segregation on MRA status were immediately given "the minimum allowable properties" including purchased hygiene products and all other property listed by plaintiff. According to the Officer-in-Charge (OIC) Clune, defendant Nichols chose what property plaintiff could possess and is responsible for this unequal treatment. All defendants have been made aware of this unequal treatment and allowed it to continue.

Mr. Kling states that he has not exhausted the prison grievance procedures. He alleges that he has "made countless verbal request (sic)" to a number of officers, that he informed the segregation review board, and that he "sent 3 inmate request forms, none of which have (sic) been answered." Plaintiff alleges that he has state and federal statutes of limitation running that "will be exceeded" if he is forced to utilize the multi-tiered prison grievance process. He contends that he should not be required to exhaust or to obtain a certified copy of his inmate account statement because that "can take weeks and even months" and great harm could occur during this period "if the conditions persist or worsen."

5

Plaintiff names Sam Cline, Warden, HCF and Mr. Nichols, A-Cellhouse Unit Team Manager, HCF, as defendants. In the caption he also lists "John/Jane Does #1-50". Based on the foregoing allegations, plaintiff asserts (1) denial of access to courts and counsel; (2) denial of "familial association"; (3) violation of equal protection, (4) excessive force, and (5) retaliation. He seeks damages "from each responsible party." In addition, he seeks "an emergency injunction" ordering defendants to "immediately stop all retaliatory actions."

**SCREENING**

Because Mr. Kling is a prisoner suing government officials, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). A pro se

6

litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

**DISCUSSION**

The court finds the following defects in the complaint that must be cured by plaintiff.

*Complaint not on Forms*

Local court rule requires that a civil rights complaint be upon court-approved forms. The clerk shall send plaintiff the appropriate forms, and he is required to submit his complaint upon the forms. He may not simply refer to his initial complaint, but must present all his claims and allegations as well as answer all questions fully on the forms.

*Failure to Exhaust*

A prison inmate is required by federal statute to exhaust all available administrative remedies before filing a § 1983

action in federal court. 42 U.S.C. § 1997e(a) expressly provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* To satisfy this statutory prerequisite, a prisoner must fully comply with the institution's grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (citing *id.*)(The "inmate may only exhaust by properly following all the steps laid out in the prison system's grievance procedures."). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim."[2] *Id.* (citing *Jernigan v. Stuchell*, 305 F.3d 1030, 1032 (10th Cir. 2002)). The exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5

---

[2] The Kansas Department of Corrections makes what is basically a four-step grievance process available to its inmates. The inmate must begin with an attempt at informal resolution and thereafter proceed through three "levels of problem solving." KS ADC 44-15-101. If informal resolution fails to solve the problem, a grievance must be submitted to a unit team member. KS ADC 44-15-101(d)(1). Thereafter, the inmate may appeal to the Warden, and ultimately to the Secretary of Corrections. KS ADC 44-15-101(d)(2),(3). Each step is fully explained in KS ADC 44-15-102, which also provides that if an inmate does not receive a response from the unit team within 10 days, a grievance report may be sent to the Warden.

(10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little*, 607 F.3d at 1249. Plaintiff's own allegations show that he has not exhausted administrative remedies on any of his claims.[3]

While Mr. Kling admits that he has failed to exhaust, he also alleges that he "sent three inmate request forms" that were never answered. He does not describe the content of these inmate requests, what date each was sent or to whom they were sent. Nor does he allege that he sent a grievance report to the warden when he received no response. Mr. Kling's own allegations show that he, at most, attempted to begin the administrative process and did not properly complete it. His allegations that he told the review board and others do not indicate that he followed proper procedures. Plaintiff asks the court not to dismiss this action due to his failure to exhaust and alleges that exhaustion "can take weeks and even months." However, the fact that the prison grievance process takes time,[4] together with plaintiff's completely conclusory and speculative

---

[3] While failure to exhaust is generally an affirmative defense so that a plaintiff is not required to plead it in the complaint, when that failure is evident, the court may sua sponte require plaintiff to show that he has exhausted. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)(acknowledging district courts may raise exhaustion question sua sponte, consistent with 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. §§ 1915 and 1915A, and dismiss prisoner complaint for failure to state a claim if it is clear from face of complaint that prisoner has not exhausted).

[4] Plaintiff's implication that a lawsuit does not take time is simply incorrect. The KDOC administrative remedy process not only has time limits that are relatively short, it produces an administrative record that facilitates judicial review, when such review is appropriate.

statement that great harm could occur are simply not sufficient to permit the court to dispense with the mandatory exhaustion prerequisite in § 1997e(a). Accordingly, the court finds that all plaintiff's claims and this action are subject to being dismissed without prejudice pursuant to 28 U.S.C. §§ 1915A, 1915(e)(2)(B)(ii), and 42 U.S.C. § 1997e(c)(1), due to plaintiff's failure to exhaust. Plaintiff is given time to show cause why his claims should not be dismissed on this ground. If he does not show good cause within the prescribed time, this action may be dismissed without further notice.

### *Claim for Emergency Injunctive Relief*

A party seeking a preliminary injunction "must demonstrate four factors: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009)(citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). The Tenth Circuit has plainly held that "because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Beltronics USA, Inc. v. Midwest Inventory*

*Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009)(quoting *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)).

The "emergency injunction" sought by plaintiff in his complaint is for the court to order defendants to "immediately stop all retaliatory actions specified in the complaint." The only allegations made to support this request are that "all facts related to Counts One, Two and Three are intentional acts of a retaliatory nature" by all defendants for plaintiff exercising "his right to defend himself against the excessive force used by John Doe #1." These conclusory allegations are clearly insufficient to demonstrate the four requisite factors. Accordingly, plaintiff's request for an emergency injunction is denied.

### *Defendants*

Even if plaintiff shows cause why this action should not be dismissed for failure to exhaust, there are other deficiencies in his complaint that must be cured as well. Warden Cline appears to be named as a defendant based solely upon his supervisory capacity at HCF. Personal participation of each named defendant is an essential element of a civil rights claim. "[T]he defendant's role must be more than one of abstract

authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). A plaintiff must plead that each Government-official defendant, through the official's own individual actions, violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Plaintiff alleges no facts whatsoever showing Cline's personal participation in the alleged excessive force or conditions of confinement imposed upon plaintiff in segregation. *See Hill v. Pugh*, 75 Fed.Appx. 715, 719 (10th Cir. 2003)(unpublished). Unless plaintiff alleges facts showing personal participation by Warden Cline in the alleged misconduct, this action shall be dismissed as against this defendant.

Of the 50 John Does added in the caption, only John Doe #1 is discussed in the complaint along with a description of his actions. No other John Doe is mentioned or described in any fashion. Nor has plaintiff provided adequate information regarding any John Doe defendant for purposes of service of process. Plaintiff's purported claims against John Does 2 through 50 will not be considered further.

### *Denial of Access Claim*

Plaintiff's assertion of denial of access to court and counsel is not supported by sufficient facts to state a claim. A prison inmate has a constitutional right of access to the courts. However, to establish a denial of access claim an inmate must demonstrate "actual injury." *Lewis v. Casey*, 518 U.S. 350, 351 (1996). In this case, Mr. Kling must allege something more than that he has been deprived of his property, phone privileges, and address information for 6 days while in segregation.[5] He must "go one step further and demonstrate that the alleged (deprivations) . . . hindered his efforts to pursue a legal claim." *Id. at* 350; *Johnson v. Miller*, 387 Fed.Appx. 832, 839 (10th Cir. 2010)("A plaintiff 'must show that any denial or delay of access to the court prejudiced him in pursuing litigation.'")(citing *Treff v. Galetka*, 74 F.3d 191, 194 (10th

---

[5]  Plaintiff makes the bald statement that he is being deprived of "the bare minimum necessities." However, he does not assert that conditions in segregation are cruel and unusual punishment, and his allegations do not meet that standard. The Eighth Amendment requires prison officials "to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998). Plaintiff does not allege that he is being denied any of these "basic necessities." The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). To the contrary, prison conditions may be "restrictive and even harsh" without violating constitutional rights. *Barney*, 143 F.3d at 1311 (quoting *Rhodes*, 452 U.S. at 347).
    Nor does Mr. Kling allege facts to satisfy the objective and subjective components of an Eighth Amendment claim. See *id.* The objective component requires that the alleged deprivation be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The subjective component requires that defendants acted with a "sufficiently culpable state of mind" meaning the official must exhibit "deliberate indifference" to a substantial risk of serious harm to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

Cir. 1996); see also *Casey*, 518 U.S. at 351)). "Further, the inmate's legal claim must be nonfrivolous because '[d]epriving someone of a frivolous claim . . . deprives him of nothing at all . . .'" *Id.*(citing *Casey*, 518 U.S. at 353 n. 3). In addition, if plaintiff is represented by counsel in the pending court action for which he claims denial of access, that representation is a "constitutionally acceptable method to assure meaningful access to the courts." *Id*. at 351 (*citing Bounds v. Smith*, 430 U.S. 817, 830 (1977)). Plaintiff does not allege facts, including dates, regarding any looming deadline or upcoming court date that requires him to personally take a specific action or necessitates that he immediately contact his attorney. He also fails to explain what legal claims he has pending and that they are nonfrivolous. Nor does he allege that he has made prison officials aware of a specific court deadline or need to contact his attorney. Furthermore, plaintiff does not describe the particular legal or other materials being withheld and explain for what case and why they are needed. His general allegations that he has deadlines and that he is unable to contact his attorney are conclusory statements that are simply not sufficient to state a claim of denial of access. Plaintiff's only specific reference to a particular action, that he is being prevented "from taking legal action after being

14

attacked by a correctional officer," is contradicted by his having filed the instant action.

Plaintiff is given the opportunity to state additional facts establishing the actual injury element of his denial of access claim or this claim may be dismissed.

### *Denial of Familial Association Claim*

This claim mainly suffers from another defect that, like failure to exhaust, is common to all deprivation claims alleged in this complaint, which is that the duration of the alleged deprivations does not suggest a constitutional violation. Plaintiff alleges that the deprivations began on March 26, 2014, with his placement in segregation. He executed the instant complaint six days later on April 1, 2014. Plaintiff alleges no facts indicating that a six-day deprivation of contact with his family upon his placement in segregation amounted to either a violation of his freedom of association under the First Amendment or an atypical and significant deprivation.[6] Nor does he describe any request that he made to contact his family, on

---

[6] In *Sandin v. Conner*, the Supreme Court held that 30 days in disciplinary segregation did not implicate a liberty interest. 515 U.S. 472, 475–76, 486, (1995). "Applying this principle," the Tenth Circuit "later held that a prisoner had failed to state a valid claim because four weeks in an isolation cell would not have created an atypical, significant deprivation without other factual allegations." *Meek v.* Jordan, 534 Fed.Appx. 762, 765 (10th Cir. 2013)(citing *Gee v. Pacheco*, 627 F.3d 1178, 1193–94 (10th Cir. 2010)).

15

what date and to whom such request was made, and what response he received.

### *Violation of Equal Protection Claim*

Plaintiff's equal protection claim consists of the following phrases: "all inmates in segregation on 'MRA status' are of a similarly situated group" and, other than him, all were "immediately given the minimum allowable properties." These phrases do not contain sufficient facts regarding similarities of other segregation inmates so as to state a plausible right to relief based upon an equal-protection violation. See *Meek*, 534 Fed.Appx. at 764. While plaintiff alleges that all other inmates housed in segregation with him received more personal property sooner, he does not allege facts showing that all or any inmates in segregation were placed there for fighting with a correctional officer or had a disciplinary infraction history or other background similar to his. See *id.* at 764-65 *(*citing *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994)(concluding that a prisoner's equal-protection claim was frivolous because of the inability to allege similarities "in every relevant respect" to other inmates who were classified more favorably)); see also *Fogle v. Pierson*, 435 F.3d 1252, 1260-61 (10th Cir. 2006)(a prisoner's equal-protection claim,

16

based on a difference in the length of administrative detention, was frivolous because it was not plausible to suggest identical circumstances with other inmates who were treated more favorably). Plaintiff does not allege that he is part of a suspect class. Because of the wide discretion afforded to prison officials and the many relevant factors these officials may consider when dealing with inmates, an inmate who is not part of a suspect class faces an "arduous, if not impossible" task to state an equal protection claim. See *Templeman*, 16 F.3d at 371 ("[I]t is 'clearly baseless' to claim that there are other inmates who are similar in every relevant respect")). Plaintiff's conclusory allegations with his formulaic recitation are not sufficient to state a plausible equal-protection claim. *Fogle*, 435 F.3d at 1261.

### *Retaliation Claim*

Plaintiff's claim of retaliation is likewise not sufficiently supported by his bald allegations. "[I]n order to establish a (constitutional) retaliation claim, a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir.

17

1998)("An inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."). "[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, . . . would not have taken place." *Id*.

As previously noted, plaintiff's support for this claim consists of nothing more than his assertion that all facts in his first three counts were "intentional acts of a retaliatory nature" taken against him for defending himself against excessive force. Plaintiff alleges no facts whatsoever to show that he would not have been placed in segregation or suffered the deprivations of which he complains "but for" a retaliatory motive on the part of all defendants' other than John Doe #1. Plaintiff was involved in a verbal and physical altercation with a correctional guard and placed in segregation later the same day. He alleges no facts whatsoever to suggest that his segregation was due to anything other than his involvement in this incident, which plainly impacted security.

### *Excessive Force Claim*

The only defendant alleged to have been involved in the excessive force incident is John Doe #1. Plaintiff may not sue any other defendant based on this incident, unless he alleges

18

facts to show that defendant's personal participation. Moreover, as noted, plaintiff has not exhausted administrative remedies on this or any of his claims.

**IT IS THEREFORE ORDERED** that plaintiff is granted thirty (30) days in which to satisfy the statutory filing fee prerequisite by submitting his motion to proceed without prepayment of fees upon forms and by providing a certified statement of his inmate account for the six-month period immediately preceding the filing of this complaint or documentation showing why this statement cannot be provided.

**IT IS FURTHER ORDERED** that within the same thirty-day period plaintiff is required to show cause why this action should not be dismissed for failure to exhaust administrative remedies and to show cause why all his claims, except that of excessive force, should not be dismissed for failure to allege sufficient facts to state a plausible constitutional claim.

**IT IS FURTHER ORDERED** that plaintiff's request for an emergency injunction (Doc. 1) is denied.

The clerk is directed to send plaintiff IFP and 1983 forms.

**IT IS SO ORDERED.**

Dated this 16th day of April, 2014, at Topeka, Kansas.

**s/Sam A. Crow**
**U. S. Senior District Judge**